UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

LANDMARK VENTURES, INC.,

                        **Plaintiff,**

        - against -

STEPHANIE COHEN, and
THE INTERNATIONAL CHAMBER OF
COMMERCE

                        **Defendants.**
————————————————————————————

13 Civ. 9044 (JGK)

<u>OPINION AND ORDER</u>

    The plaintiff, Landmark Ventures, Inc. ("Landmark") was the
losing party in an arbitration that it brought against InSightec
Ltd. ("InSightec") to recover certain fees allegedly owed by
InSightec.  The arbitration was presided over by defendant
Stephanie Cohen (the "Arbitrator") and conducted pursuant to the
rules of defendant the International Chamber of Commerce
("ICC").  On November 7, 2013 Landmark filed this action against
the Arbitrator and the ICC (collectively, "the defendants"), in
New York State Supreme Court.  On December 23, 2013 the
defendants removed the case to this Court pursuant to 9 U.S.C.
§§ 202 and 205 and 28 U.S.C. § 1446 because the action relates
to an arbitration falling under the Convention on the
Recognition and Enforcement of Foreign Arbitral Awards.
Kimmelman Decl. Ex. B.  The defendants now move to dismiss the
Amended Complaint and for an award of sanctions.  For the
reasons explained below, the motions are granted.

## I.

In a separate action, Landmark filed a petition in this Court to vacate the Award issued by the Arbitrator (the "Award") and InSightec cross-petitioned to affirm the Award.  Landmark Ventures, Inc. v. InSightec, Inc., 14cv0233 (JGK).  In an Opinion issued in that case contemporaneously with this Opinion, the Court has enforced the Award.  That Opinion also details the substance of the dispute between Landmark and InSightec, and the factual background will be discussed here only to the extent necessary to understand Landmark's claims against the defendants.

## A.

Landmark is a corporation that is incorporated in and has its principal place of business in New York State.  Am. Compl. ¶ 1.  On July 28, 2011, Landmark executed a letter of engagement (the "Agreement") to provide strategic banking and financial advisory services to InSightec.  Id. at ¶ 7.  InSightec, an Israeli corporation, develops medical devices.  Am. Compl. ¶ 4, 6.

Landmark agreed to "pursue prospective strategic and/or financial investors and partners," provided that these prospective investors did "not include the Company's existing

shareholders or their affiliates on the date hereof." Am.
Compl. Ex. 1 ("Agreement") § 1.  The Agreement provided that
Landmark was entitled to fees for its services.  Agreement § 3.
For each qualified Strategic Partnership initiated during the
exclusive engagement period or a specified Tail period, Landmark
was entitled to at least a minimum strategic partnership fee.
Agreement § 3(iii).  Disputes under the Agreement are "governed
by the laws of the State of New York."  The Agreement contains a
broad, mandatory arbitration clause providing that, "[a]ll
disputes arising out of or in connection with this Letter
Agreement shall be finally settled under the Rules of
Arbitration of the International Chamber of Commerce by an
arbitrator appointed in accordance with said Rules."  Agreement
§ 10.

## B.

A dispute arose when GE Healthcare invested $27.5 million
in InSightec.  Am. Compl. Ex. 4. ("Award") ¶¶ 9, 23.  At the
time the Agreement was executed, GE Healthcare was an affiliate
of GE, an InSightec shareholder.  Award ¶ 25.  Landmark asserted
that InSightec owed it a "minimum strategic partnership fee" and
that InSightec breached the Agreement when it refused to pay
Landmark what it was owed.  Award ¶¶ 32, 37.  The dispute turned
on the proper interpretation of the Agreement.  Award ¶¶ 38-40.

On July 5, 2012, Landmark submitted a Request for
Arbitration to the ICC to arbitrate the dispute pursuant to the
Agreement.  Award ¶ 48.  On December 20, 2012, after the parties
failed to nominate an arbitrator jointly, the ICC appointed
defendant Stephanie Cohen to be the Arbitrator.  The Arbitrator
was selected from the ICC roster of arbitrators to serve as the
sole arbitrator presiding over the case.  Am. Compl. ¶ 16.

At the outset of the arbitration, the Arbitrator,
InSightec, and Landmark all signed the "terms of reference,"
outlining the procedural rules to be followed in the
arbitration.  Am. Compl. ¶ 16.

## C.

In this action, Landmark alleges that the Arbitrator made
procedural decisions that were unfair to Landmark, particularly
by limiting its discovery requests, by failing to grant Landmark
an extension of time to locate an expert witness while allowing
InSightec to call an expert witness, and by allegedly
considering an unauthorized brief by Insightec.  Landmark also
challenges the Arbitrator's decision to assess attorney's fees
and costs against Landmark and claims that a portion of
InSightec's fees were incurred prior to the commencement of the
arbitration and should not have been assessed.  Landmark also
alleges that the Arbitrator incorrectly interpreted the
Agreement.  In the first cause of action, Landmark alleges that

the Arbitrator violated her oath by making the rulings adverse
to Landmark.  In the second cause of action, Landmark alleges
that the ICC is liable for refusing to correct the Award and for
assessing additional legal fees and costs against Landmark.

On January 15, 2014, the defendants wrote a letter to this
Court requesting leave to file a motion to dismiss.  Kimmelman
Decl. Ex. C.  In the letter, the defendants noted that the
plaintiff's claims were barred because the parties had
contractually agreed that the Arbitrator and the ICC would not
be subject to liability.  Moreover, the letter explained that
the claims were barred by the doctrine of arbitral immunity, and
that the law is so clear in the Second Circuit, that courts have
awarded sanctions against plaintiffs asserting similar claims.
Id. at 3.  After a premotion conference on February 14, and a
discussion of the well-settled law of arbitral immunity, the
plaintiff refused to withdraw its complaint without prejudice.
See Tr. of Oral Arg. at 22.  On February 25, 2014, the
defendants sent the plaintiff a letter and notice pursuant to
Federal Rule of Civil Procedure 11(c)(2) that laid out the
grounds upon which the defendants would seek sanctions if the
plaintiff persisted with its complaint.  Id.

After Landmark refused to dismiss the case without
prejudice, on March 5, 2014, the defendants filed a Motion to
Dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the

5

Federal Rules of Civil Procedure and on April 17, 2014, the
defendants filed a Rule 11 Motion for Sanctions.

## II.

### A.

The defendants move to dismiss Landmark's amended complaint
pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure.  In deciding a motion to dismiss pursuant to Rule
12(b)(6), the allegations in the complaint are accepted as true,
and all reasonable inferences must be drawn in the plaintiff's
favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d
Cir. 2007).  The Court's function on a motion to dismiss is "not
to weigh the evidence that might be presented at a trial but
merely to determine whether the complaint itself is legally
sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.
1985).  The Court should not dismiss the complaint if the
plaintiff has stated "enough facts to state a claim to relief
that is plausible on its face." Bell Atl. Corp. v. Twombly, 550
U.S. 544, 570 (2007).  "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009).  While the Court should construe the factual allegations
in the light most favorable to the plaintiff, "the tenet that a

6

court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." <u>Id.</u>

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.  <u>See</u> <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002).


### B.

In the Agreement, the parties agreed to follow and be bound by the ICC Rules, Agreement § 10, which were incorporated by reference into the Agreement.  Article 40 of the ICC Rules, entitled "Limitations of Liability," provides,

> <u>The arbitrators</u>, any person appointed by the arbitral tribunal, the emergency arbitrator, the Court and its members, <u>the ICC</u> and its employees, and the ICC National Committees and Groups and their employees and representatives <u>shall not be liable to any person for any act or omission in connection with the arbitration</u>, except to the extent such limitation of liability is prohibited by applicable law.

Article 40 of the ICC Rules, Jan. 1, 2012, Kimmelman Decl. Ex. F (emphasis added).  Thus, Landmark agreed not to sue the Arbitrator and the ICC for any conduct that occurred "in

7

connection with the arbitration" provided that this limitation of liability was not prohibited by law.

The acts that Landmark alleges the Arbitrator and ICC improperly performed were all done in connection with the arbitration.  The ICC Rules, which the parties agreed to follow, granted the Arbitrator the authority to make discovery rulings, manage case deadlines, award attorney's fees, and to interpret the contract at issue in the dispute in connection with the arbitration.  See ICC Rules Arts. 22(2), 25(3), 26(3), 37(4)- (5).  The ICC also had authority to review and approve draft arbitration awards submitted to it in connection with the arbitration.  See id. at Art. 33.  Furthermore, there is no colorable argument that there is any law that prevents such an agreement, nor has Landmark made any such argument.[1]

Because the alleged conduct falls directly within Article 40 of the ICC Rules, the parties agreed that the Arbitrator and the ICC would be immune from suit and this contractual provision is binding.  See Reed & Martin, Inc. v. Westinghouse Elec. Corp., 439 F.2d 1268, 1271, 1276 (2d Cir. 1971) (binding parties

---

[1] Landmark makes a policy-based argument that allowing parties to contract away such immunity will make all of the procedural rules mere dead letters because they can be ignored by the arbitrator without any recourse.  However, even with arbitral immunity, the procedural rules will not become obsolete by disuse because arbitrators can be expected to follow them, and in exceptional circumstances the violations of such rules can serve as a basis for vacating the award.

to the American Arbitration Association ("AAA") Rules when their
contract provided that their arbitration would be governed by
them); Kuruwa v. Am. Arbitration Ass'n, No. 13cv2419, 2013 WL
2433068 (S.D.N.Y. June 3, 2013) (finding arbitrator and AAA
immune from suit based on AAA Rule incorporated into agreement);
Richardson v. Am. Arbitration Ass'n, 888 F. Supp. 604, 604
(S.D.N.Y. 1995) (finding AAA immune from suit based on an AAA
Rule incorporated into a collective bargaining agreement).
Accordingly, the Arbitrator and the ICC are absolutely immune
from suit based on the parties' contract.

### c.

Moreover, under well-established Federal common law,
arbitrators and sponsoring arbitration organizations have
absolute immunity for conduct in connection with an arbitration.
See Barbara v. New York Stock Exch., 99 F.3d 49, 58 (2d Cir.
1996) (citing Austern v. Chicago Bd. Options Exch., Inc., 898
F.2d 882, 885-87 (2d Cir. 1990)).  The Court of Appeals for the
Second Circuit has found such absolute immunity in the most
unequivocal terms: "[w]e hold that arbitrators in contractually
agreed upon arbitration proceedings are absolutely immune from
liability in damages for all acts within the scope of the
arbitral process."  Austern, 898 F.2d at 886.  The Court of
Appeals also made clear that this is the uniform rule accepted

by every Court of Appeals to have considered the issue.  Id.
(collecting cases for the Third, Fifth, Sixth, Seventh, Eighth,
and Ninth Circuit Courts of Appeals); see also Pfannenstiel v.
Merrill Lynch, Pierce, Fenner & Smith, 477 F.3d 1155, 1158-60
(10th Cir. 2007); New England Cleaning Servs., Inc. v. Am.
Arbitration Ass'n, 199 F.3d 542, 545 (1st Cir. 1999).

Such absolute immunity for actions done in connection with
arbitration is "essential to protect the decision-maker from
undue influence and [to] protect the decision-making process
from reprisals by dissatisfied litigants."  Austern, 898 F.2d at
886 (citation omitted).  In adopting a law of absolute arbitral
immunity, the Second Circuit Court of Appeals emphasized that
"individuals . . . cannot be expected to volunteer to arbitrate
disputes if they can be caught up in the struggle between the
litigants and saddled with the burdens of defending a lawsuit."
Id. (citation omitted).

Sponsoring arbitration organizations like the ICC are
equally "entitled to immunity for all functions that are
integrally related to the arbitral process."  Id.; see also
Global Gold Min., LLC v. Robinson, 533 F. Supp. 2d 442, 448
(S.D.N.Y. 2008) (finding the ICC had arbitral immunity and
noting that arbitral immunity "extends equally to claims against
arbitral administrative institutions, when they perform
'functions that are integrally related to the arbitral process'"

(quoting Austern, 898 F.2d at 886)). "[T]he rule permitting a disappointed party seeking arbitration to put the issue to a court should not be read to contemplate an action against the ICC Court itself seeking review of its prima facie decision." Global Gold, 533 F. Supp. at 448 (dismissing suit against the ICC based on arbitral immunity).

All of the conduct Landmark complains about occurred within the scope of the arbitral process. Landmark's suit against the Arbitrator and the ICC is a clear attempt to circumvent the exclusive means to challenge an arbitration award and precisely the type of action arbitral immunity was created to prevent. See Austern, 898 F.2d at 886. Thus, the Arbitrator and the ICC are absolutely immune from suit under the doctrine of arbitral immunity.

Based on the parties' contract, and the doctrine of arbitral immunity, Landmark has failed to plead a plausible claim against the Arbitrator or the ICC. Therefore, the motion to dismiss the Amended Complaint is granted.

### III.

### A.

The Arbitrator and the ICC have also moved for sanctions against Landmark under Federal Rule of Civil Procedure 11. Rule 11(b) provides as follows:

> By presenting to the court a pleading, written motion,
> or other paper . . . an attorney . . . certifies that
> to the best of [the attorney's] knowledge,
> information, and belief, formed after an inquiry
> reasonable under the circumstances . . . it is not
> being presented for any improper purpose . . . [and]
> the claims, defenses, and other legal contentions are
> warranted by existing law or by a nonfrivolous
> argument for extending, modifying, or reversing
> existing law or for establishing new law.

To constitute a frivolous legal position for purposes of Rule 11, "it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc., 186 F.3d 157, 167 (2d Cir. 1999) (quoting Mareno v. Rowe, 910 F.2d 1043, 1047 (2d Cir. 1990)). The standard for triggering the imposition of sanctions under Rule 11 is "objective unreasonableness." Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000). Once a violation of Rule 11 is found, it is within the Court's broad discretion whether to impose Rule 11 sanctions. See Fed. R. Civ. P. 11(c)(1); Knipe v. Skinner, 19 F.3d 72, 78 (2d Cir. 1994). Rule 11 sanctions are warranted in this case.

The defendants repeatedly put Landmark on notice that its claims against them were barred by contract and by the doctrine of arbitral immunity. In the January 15, 2014 letter, Counsel for the defendants explained the clear law that barred the claims and warranted sanctions for pursuing the claims. At a

pre-motion conference on February 14, 2014, Counsel for the
defendants urged Landmark to withdraw the case, which Landmark
refused to do.  On February 25, 2014, the defendants filed a
notice of their intention to seek sanctions and explained the
binding precedent that established the doctrine of arbitral
immunity.

Instead of heeding these precedents and dismissing the case
without prejudice or responding to the cases in its reply,
Landmark simply ignored these precedents and proceeded with the
case.  For the reasons explained above, the claims against the
Arbitrator and the ICC are frivolous because they are barred by
the Agreement and by the doctrine of arbitral immunity.  Indeed,
at the argument of the current motions, Counsel for Landmark
acknowledged that, under the clear law in the Second Circuit,
this Court is required to dismiss this case.  Tr. of Oral Arg.
at 30.  There is also no non-frivolous argument for reversing
current law.  At least two other judges of this Court have
imposed Rule 11 sanctions under similar circumstances.  Truong
v. New York Hotel & Motel Trades Council, AFL-CIO, 603 F. Supp.
2d 742, 744 (S.D.N.Y. 2009) (imposing Rule 11 sanctions when
party to arbitration sued organization of labor arbitrators
because "no reasonable attorney could have thought ['there was a
basis for these claims'] under existing Second Circuit
precedent"); Weinraub v. Glen Rauch Sec., Inc., 419 F. Supp. 2d

13

507, 517 (S.D.N.Y. 2005) (imposing Rule 11 sanctions when party
to arbitration asserted a breach of contract claim against an
arbitrator, noting, the claim was "frivolous because any
reasonable attorney would have recognized that such a claim was
barred by arbitral immunity").  For all the reasons explained by
the Court of Appeals in Austern, it is important that
arbitrators and arbitral organizations have the ability to
perform their arbitral function without the fear of being sued
by disappointed parties.  Therefore, Rule 11 sanctions are
warranted in this case and, in the exercise of discretion,
should be imposed.

## B.

Because the frivolous arguments were made by the
plaintiff's Counsel, the Rule 11 sanctions should be imposed on
the lawyer and law firm responsible for making those arguments.
See Fed. R. Civ. P. 11(c)(1).  In determining the nature of the
sanctions, the court has broad discretion, but sanctions must be
"limited to what suffices to deter repetition of the conduct or
comparable conduct by others similarly situated."  Fed. R. Civ.
P. 11(c)(4); see Margo, 213 F.3d at 65 ("The district court
acted well within its discretion in granting the defendants
reimbursement for a portion of their attorney['s] fees to
compensate them for the waste of the court's and counsel's

14

time."); see also Katzman v. Victoria's Secret Catalogue, 167
F.R.D. 649, 661 (S.D.N.Y. 1996) ("While [the sanction] is
certainly less than Defendants' total legal fees incurred as a
result of Plaintiffs' improper filing, it is nonetheless the
minimum amount the Court deems necessary to constitute an
appropriate sanction").

"[I]f imposed on motion and warranted for effective
deterrence, an order directing payment to the movant of part or
all of the reasonable attorney's fees and other expenses" may be
made.  Fed R. Civ. P. 11(c)(4).  In determining reasonable
expenses and fees, a presumptively reasonable fee is determined
by multiplying the number of hours of legal work required to
defend the case by the attorney's hourly rate.  Perdue v. Kenny
A ex rel. Winn, 559 U.S. 542, 546 (2010); see also Milea v.
Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).
However, a district court must also consider all relevant
circumstances in concluding what a reasonable client would
expect to pay.  Arbor Hill Concerned Citizens Neighborhood Ass'n
v. County of Albany and Albany County Bd. Of Elections, 522,
F.3d 182, 184 n. 2, 190 (2d Cir. 2007).

While it is generally improper to make a reasonable fee
determination without using as a starting point the amount
determined by multiplying the hours spent by the a reasonable
hourly rate, see Milea, 658 F.3d at 166, Rule 11 provides for

15

sanctions, not simply fee-shifting.  The touchstone under Rule 11 is an amount that is sufficient for deterrence, and all or part of the movant's reasonable attorney's fees is only one possible sanction.  A court's broad discretion in determining monetary sanctions permits it to assign sanctions that are not directly tied to actual fees. See <u>Katzman</u>, 167 F.R.D. at 661.

It is plain that in this case the defendants' reasonable attorney's fees and costs would be far in excess of any sanction that would be sufficient for deterrence.  Requiring the defendants to submit further papers and fee calculations in support of a request for attorney's fees and costs would be needless and uncompensated work.  Counsel for the defendants intimated at oral argument that the fees incurred to date were well in excess of $100,000.  Tr. of Oral Arg. at 26.  While that amount may have been incurred in briefing the thorough and successful motions, it was in excess of the amount reasonably necessary for deterrence and in excess of the amount necessary to explain that the plaintiff's claims were frivolous.  That amount is also already in excess of the amount awarded in similar cases.  See, e.g., <u>Truong v. New York Hotel and Motel Trades Council</u>, No. 07cv11383, 2011 WL 147689, at *2-3 (S.D.N.Y. Jan. 12, 2011) (awarding sanctions of attorney's fees in the amount of $72,761.50); <u>Weinraub</u>, 419 F. Supp. 2d at 520

(awarding sanctions of attorney's fees in the amount of
$7,200.65).

Therefore, considering all of the relevant circumstances of
this case, a reasonable sanction of $20,000 will be imposed on
William B. Flynn and his law firm to be paid to the defendants'
Counsel.  That sanction is reasonable and sufficient to deter
repetition of the conduct or comparable conduct by others.


**CONCLUSION**

The Court has considered all the remaining arguments of the
parties.  To the extent not specifically addressed above, they
are either moot or without merit.  For the foregoing reasons,
the defendants' motion to dismiss the amended complaint is
**granted**. The defendants' motion for Rule 11 Sanctions is
**granted**.  William B. Flynn and the law firm of McCabe & Flynn,
LLP, are ordered to pay Sidley Austin LLP the amount of $20,000
within thirty (30) days.  **The Clerk is directed to enter a
judgment in favor of the defendants.  The Clerk is also directed
to close all pending motions and to close this case.**
**SO ORDERED.**

Dated:    New York, New York
          November 25, 2014          _____/s/_____
                                          John G. Koeltl
                                    **United States District Judge**